IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| EDWARD WADE GARRISON, | ) | No. 5:14-CV-337-DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SELECT PORTFOLIO SERVICING, | ) | |
| INC., JPMORGAN CHASE BANK, | ) | |
| N.A., and COLE D. PATTON, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING JPMORGAN CHASE'S MOTION TO DISMISS

On August 21, 2014, the Court held a hearing on a Motion to Dismiss filed by Defendant JPMorgan Chase Bank, N.A. ("JPMorgan Chase"). ("Mot.," Dkt. # 4.) Rachel Lee Hytken, Esq., appeared at the hearing on behalf of JPMorgan Chase; Plaintiff Edward Garrison ("Plaintiff") did not appear. After careful consideration of the memoranda in support of the Motion, and in light of JPMorgan Chase's arguments at the hearing, the Court, for the reasons that follow, **GRANTS** JPMorgan Chase's Motion.

BACKGROUND

On April 10, 2002, Plaintiff executed a promissory note and deed of trust in the amount of $123,882.00 at over 11% interest payable to Long Beach

1

Mortgage Company.  ("Compl.," Dkt. # 1, Ex. 1 at 12.)  The note and deed of trust were secured by property located at 13118 Hill Forest Street, San Antonio, Texas (the "Property").  (Id.)  In November 2007, Plaintiff defaulted on the note.  (Mot., Ex. C at 1–2.)

Long Beach Mortgage transferred the note to Washington Mutual Mortgage Corporation.  (Id.)  After the note was transferred, Washington Mutual negotiated with Plaintiff to modify the note to a 3% interest rate.  (Id.)  Washington Mutual subsequently assigned the note and deed of trust to Defendant JPMorgan Chase in May 2009.  (Id.)  Plaintiff again fell behind on his loan payments in September 2009.  (Mot., Ex. C. at 2.)  JPMorgan Chase notified Plaintiff of his default on March 8, 2010 and of its intention to accelerate the note unless Plaintiff immediately cured the default.  (Id.)  On May 17, 2010, as a result of Plaintiff's failure to cure his default, JPMorgan Chase accelerated the note and began foreclosure proceedings.  (Id.)

However, in June 2010, a representative of JPMorgan Chase orally promised Plaintiff that if he remitted $5,877.41 before June 30, 2010, his note would be reinstated.  (Id.)  On July 1, 2010, JPMorgan Chase received a check from Plaintiff in the amount requested, but because it was after the deadline and did not include funds sufficient to bring the note current through July 2010, JPMorgan Chase returned Plaintiff's check.  (Id.)

On October 1, 2010, Plaintiff filed suit in state court attempting to halt the foreclosure proceedings. (Id.) That suit was dismissed without prejudice in December 2010. (Id.) Plaintiff still failed to cure the default following the dismissal, so on March 6, 2012, JPMorgan Chase sent Plaintiff another notice of foreclosure sale. (Id.)

On March 5, 2012, the day prior to receiving his second notice of foreclosure sale, Plaintiff filed a second lawsuit (the "Second Lawsuit") against JPMorgan Chase. (Id.) The Second Lawsuit alleged claims of fraud, breach of contract and wrongful foreclosure. (Id. at 3.) On September 4, 2013, the Court granted summary judgment against Plaintiff on all of his claims. (Id. at 5.)

Defendant Select Portfolio began servicing Plaintiff's loan on March 1, 2014 and set the foreclosure sale to take place on April 1, 2014, because of Plaintiff's continued default. (Compl. at 13.) Plaintiff brought the instant suit on March 31, 2014, alleging that Defendants JPMorgan Chase, Select Portfolio, and Cole D. Patton violated the Fair Debt Collections Practices Act breach of contract, fraud, and breach of fiduciary duty. (Id. at 14–15.)

On April 30, 2014, Defendant JPMorgan Chase filed a Motion to Dismiss that is currently before the Court arguing that because Plaintiff's claims arise out of the same cause of action as the second lawsuit, the doctrine of res judicata bars Plaintiff's claims. (Mot. at 4–7.) JPMorgan Chase also asserts that

Plaintiff did not state a claim for which relief can be granted by failing to sufficiently plead the elements of each of his causes of action.  (Id. at 6–7.)  Plaintiff did not file a Response.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Review is limited to the contents of the complaint and matters properly subject to judicial notice.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  In analyzing a motion to dismiss for failure to state a claim, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  See Twombly, 550 U.S. at 555–56.  In providing grounds for relief, however, a plaintiff must do more

than recite the formulaic elements of a cause of action.  See Id. at 556–57.  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted).  Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations."  Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court."  Twombly, 550 U.S. at 558 (citation omitted).  However, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice.  See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).

## DISCUSSION

I.  Local Rule 7(e)(2)

Local Court Rule 7(e)(2) provides that "[i]f there is no response filed

within the time period prescribed by this rule, the court may grant the motion as unopposed." W.D. Tex. Local R. 7(e)(2). Here, Plaintiff did not file a Response, thereby permitting the Court to grant JPMorgan Chase's Motion as unopposed. Nevertheless, this Court's practice is to examine the merits of an unopposed motion.

II.     Plaintiff's Claims are Barred by Res Judicata

"The federal doctrine of res judicata bars relitigating any part of the cause of action in question, including all claims and defenses that were actually raised <u>or could have been raised</u>." <u>Aerojet-Gen. Corp. v. Askew</u>, 511 F.2d 710, 715 (5th Cir. 1975) (emphasis added). This is to prevent litigants from taking multiple bites at the judicial apple when they had a full and fair opportunity to litigate their cases and, as is the case here, to prevent individuals from abusing the legal system by endlessly filing meritless claims. <u>See</u> <u>Montana v. United States</u>, 440 U.S. 147, 153 (1979) (precluding parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources and fosters reliance on the legal system).

The Fifth Circuit has developed a four part-test, each prong of which must be met, to find a case is barred by res judicata:

(1) The parties must be identical in the two actions;

(2) a court of competent jurisdiction must have rendered the previous judgment;

(3) there must be a final judgment on the merits; and

(4) the same claim or cause of action must be involved in both cases.

Ellis v. Amex Life Ins. Co., 211 F.3d 935, 937 (5th Cir. 2000).

The first three prongs of res judicata are easily met in this case. First, Plaintiff, JPMorgan Chase, and Cole Patton were all parties to the previous lawsuits. (Compare Mot., Ex. A at 1, with Compl. at 10.) Second, the United States District Court for the Western District of Texas rendered judgment in the Second Lawsuit while properly exercising subject-matter jurisdiction. (Mot., Ex. B.) Third, the Second Lawsuit was decided on the merits and summary judgment was rendered against Plaintiff on all of his claims. (Mot., Ex. C at 1–6.)

With respect to the fourth prong, the Fifth Circuit has adopted the "transactional test" to determine whether two suits involve the same claim or cause of action. Petro-Hunt, L.L.C. v. United States, 365 F.3d 385, 395 (5th Cir. 2004). Under that test, the preclusive effect of a prior judgment extends to all rights the original plaintiff had "with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose." Id. at 395–96.

> What constitutes a "transaction" or "series of transactions," is determined by giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

7

Id. (quoting Restatement (Second) of Judgments § 24(2) (1982)).  In other words, "[t]he critical issue is whether the two actions under consideration are based on the same nucleus of operative facts."  Id. (quoting In re Southmark Corp., 163 F.3d 925, 934 (5th Cir. 1999)).   Thus, the Court will review the facts contained in both of Plaintiff's Complaints to determine whether they are part of the same transaction or series of transactions, which arise from the same nucleus of operative facts.

First, Plaintiff's claims in this lawsuit arise from the same loan and deed of trust as his claims in the Second Lawsuit.  (Compare Mot., Ex. A at 1, with Compl. at 10.)  This falls squarely within the meaning of connected transactions.  See Mahlin v. GMAC Mortgage LLC, Civil No. 3:13-CV-906-M-BK, 2013 WL 6153289, at *3 (N.D. Tex. Nov. 22, 2013) (finding the transaction test was met where a new cause of action was brought against foreclosure of the same property in a subsequent suit).

Additionally, Plaintiff pleads substantially similar facts in the present case as he did in the Second Lawsuit.  There, Plaintiff's claims arose from allegations that JPMorgan Chase "began requesting increased payments without notice" after Plaintiff negotiated a loan modification agreement with Washington Mutual Mortgage Corporation for a 3% interest rate.  (Mot., Ex. A at 3.)  Plaintiff also claimed that JPMorgan Chase wrongfully rejected his payments and

8

demanded more money after he allegedly attempted to reinstate the loan. (Id. at 3–5.) In the current lawsuit, Plaintiff alleges that after he and Washington Mutual Mortgage Corporation entered an alleged loan modification for a 3% interest rate, JPMorgan Chase "began increasing the interest rate and resulting increased payment amounts without notice or modification," including "late fees," "attorney's fees," and "higher escrow costs." (Compl. at 13–14.) He also contends that JPMorgan refused to accept his loan payments. (Id. at 5.) Plaintiff's two suits make the same claims: essentially that a genuine issue of material fact as to the amount owed exists because JPMorgan Chase increased the payment amounts by increasing the interest rate and adding additional, incorrect fees and that JPMorgan Chase wrongfully rejected his attempts to tender loan payments.

Here, Plaintiff's claims arise from the same nucleus of operative facts. In essence, Plaintiff's instant lawsuit is simply a thinly veiled attempt to re-litigate a previously adjudicated issue. Although the Second Lawsuit involved claims for breach of contract, fraud, and wrongful foreclosure and the instant lawsuit alleges breach of contract, fraud, breach of fiduciary duty, and violations of the Fair Debt Collection Practices Act, the differences in these legal theories are immaterial. See Cuauhtli v. Chase Home Fin. LLC, 308 F. App'x 772, 774 (5th Cir. 2009). Every claim Plaintiff brings before this Court has been previously alleged or could have been alleged in the Second Lawsuit. Consequently, all of Plaintiff's claims of

violations of the Fair Debt Collections Practices Act through breach of contract, breach of fiduciary duty and fraud are barred by res judicata.

III.   Plaintiff Failed to Properly Allege Any Causes of Action

Even if Plaintiff's claims were not barred by res judicata, JPMorgan Chase maintains that Plaintiff's allegations still fail to state cognizable claims. (Mot. at 7–11.)

    a.   Breach of Contract

In its entirety, Plaintiff's breach-of-contract claim reads: "Defendant Chase breached the contract with Plaintiff by raising the interest rate from a fixed 3% interest rate to interest rates as high as 4% and 5%, nearly double the interest legitimately owed by Plaintiff." (Compl. at 13.) Under Texas law, the elements of a breach of contract claim are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." Valero Mktg. & Supply Co. v. Kalama Int'l Liab. Co., 51 S.W.3d 345, 351 (Tex. App. 2001). Plaintiff fails to show that he performed or tendered performance. All he states is that "Defendants refused to accept payment from Plaintiff." (Compl. at 12.) Plaintiff does not allege what type of performance the contract called for or that his "payment" constituted performance.

10

But even if such a statement, considered in a light most favorable to Plaintiff, sufficiently satisfied the second element for a breach-of-contract claim to survive a motion to dismiss, Plaintiff also fails to allege enough facts to allow the Court to infer that JPMorgan Chase breached that contract by increasing the interest rate, because he never proffered a specific provision in the note that forbade interest rate increases. "To plead a breach of contract claim, a plaintiff must identify a specific provision of the contract that was allegedly breached." Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc., --- F. Supp. 2d ----, 3:12-CV-1607-O, 2014 WL 360349, at *7 (N.D. Tex. Feb. 3, 2014); see also Williams v. Wells Fargo Bank, N.A., 560 F. App'x 233, 238 (5th Cir. Tex. 2014) ("[A] claim for breach of a note and deed of trust must identify the specific provision in the contract that was breached."). While Plaintiff is "not required to outline all the elements of the claim," he "must provide enough factual allegations to draw the reasonable inference that the elements exist." Innova Hosp. San Antonio, L.P., 2014 WL 360349, at *7. Here, Plaintiff failed to allege enough facts about the terms of the contract to raise his right to relief above a speculative level. See Twombly, 550 U.S. at 555. He does not identify what provisions were breached or provide factual allegations about the terms (especially the terms concerning interest) of the contract and therefore his breach-of-contract claim fails. See Hoffman v. L & M Arts, 774 F. Supp. 2d 826, 837 (N.D. Tex. 2011) (noting

that a plaintiff failed to plead a plausible claim because she did not allege "specific act or omission of [defendant] that failed to comply with its obligations").

      b.     <u>Fraud</u>

Plaintiff alleges JPMorgan Chase committed fraud by "charging a higher interest rate to Plaintiff and packaging this higher interest rate into higher monthly payments" and by charging late fees. (Comp. at 13–14.) A plaintiff seeking to prevail on a fraud claim must prove that (1) the defendant made a material misrepresentation; (2) the defendant knew the representation was false or made the representation recklessly without any knowledge of its truth; (3) the defendant made the representation with the intent that the other party would act on that representation or intended to induce the party's reliance on the representation; and (4) the plaintiff suffered an injury by actively and justifiably relying on that representation. <u>Exxon Corp. v. Emerald Oil & Gas Co.</u>, 348 S.W.3d 194, 217 (Tex. 2011). To succeed on a claim of fraud, a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Plaintiff's fraud claim does not allege any misrepresentation, or that JPMorgan Chase knew the representation was false, or that JPMorgan Chase intended Plaintiff to rely on their misrepresentation. Plaintiff's fraud claim merely repackages his breach-of-contract claim. Accordingly, Plaintiff fails to properly state a claim for which relief can be granted.

    c.    <u>Breach of Fiduciary Duty</u>

Under Texas law, the elements of a cause of action for breach of fiduciary duty are: (1) that the plaintiff and defendant had a fiduciary relationship; (2) the defendant breached its fiduciary duty to the plaintiffs; and (3) the defendant's breach resulted in injury to the plaintiff. <u>Williams v. Countrywide Home Loans, Inc.</u>, 504 F. Supp. 2d 176, 192 (S.D. Tex. 2007) (citing <u>Jones v. Blume</u>, 196 S.W.3d 440, 447 (Tex. App. 2006)).

Texas courts have consistently held that the mortgagee-mortgagor relationship is not a fiduciary one. See <u>Mfrs. Hanover Trust Co. v. Kingston Investors Corp.</u>, 819 S.W.2d 607, 610 (Tex. App. 1991) ("It is well settled that the relationship between a borrower and its lender is neither a fiduciary relationship, nor a special relationship."). "Such a duty is recognized only where the contract between the parties expressly provides such a duty or where there is a special relationship between the parties to the contract." <u>Manges v. Guerra</u>, 673 S.W.2d 180, 183 (Tex. 1984); <u>see also</u> <u>Associated Indem. Corp. v. CAT Contracting, Inc.</u>, 964 S.W.2d 276, 287 (Tex. 1998) (holding that the special relationship must exist prior to, and apart from, the agreement made the basis of the suit in order to impose an informal fiduciary duty in a business transaction). As such, no fiduciary duty existed between Plaintiff and JPMorgan Chase. Therefore, it is unnecessary to examine whether JPMorgan Chase breached any such duty.

## CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Defendant JPMorgan Chase's Motion to Dismiss (Dkt. # 4).

Although many of the legal theories discussed in this Order apply equally to Defendants Cole Patton and Select Portfolio, neither party has moved to dismiss Plaintiff's claims against them.  As such, it is premature for the Court to dismiss Plaintiff's claims against Defendants Cole Patton and Select Portfolio in the absence of a motion to dismiss.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, August 21, 2014.

_____
David Alan Ezra
Senior United States Distict Judge